# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-15-00334-CR

**Ex parte Moses Martinez**

### FROM THE COUNTY COURT AT LAW NO. 2 OF BELL COUNTY
### NO. 2C11-07750, HONORABLE JOHN MICHAEL MISCHTIAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Moses Martinez pleaded no contest to the misdemeanor offense of driving while intoxicated and was sentenced to three days in jail and an $850 fine.[1]  Subsequently, Martinez filed an application for a writ of habeas corpus, asserting that his trial counsel had rendered ineffective assistance by failing to advise him of the immigration consequences of his guilty plea.[2] The trial court denied relief.  In a single issue on appeal, Martinez asserts that the trial court abused its discretion by doing so.  We will affirm the trial court's order.

## BACKGROUND

The record reflects that Martinez was arrested for driving while intoxicated on September 3, 2011, and that he pleaded no contest to that offense on August 9, 2012.  In his habeas application, Martinez asserted that, prior to his plea, trial counsel had failed to advise him of "the severe immigration consequences that would result from his pleading no contest to the criminal

---

[1] *See* Tex. Penal Code § 49.04.

[2] *See Padilla v. Kentucky*, 559 U.S. 356, 374 (2010).

charges against him." Specifically, Martinez claimed that pleading no contest to driving while intoxicated made him ineligible for the Deferred Action for Childhood Arrivals program ("DACA"), and, according to Martinez, counsel had failed to warn him of that fact.[3] Martinez also claimed that, as a result of his plea, he is "unable to apply for DACA and has been ordered to be deported to Mexico." Martinez alleged that, had he been "advised of the severe consequences of his driving while intoxicated conviction and his ineligibility for immigration relief, he would not have chosen to plead to the listed offense; rather he would have insisted on a trial on the merits."

The only witnesses to testify at the habeas hearing were Martinez and his trial counsel during the DWI proceedings, Scott Sinsabaugh. Martinez, who was 24 years old at the time of the hearing, testified that he had been brought into the United States by his parents when he was one year old, had lived in Austin as a child, and had graduated from Reagan High School. Martinez explained that, following his arrest for DWI, he had hired Sinsabaugh to represent him in that matter. Martinez added that he had also hired an immigration attorney following his arrest. According to Martinez, neither Sinsabaugh nor his immigration attorney had informed him of DACA. Martinez further testified that he was unaware at the time of his plea that a conviction for DWI would make him

---

[3] DACA is a federal directive, announced by the Secretary of the Department of Homeland Security on June 15, 2012, purporting to defer the enforcement of immigration laws as to certain individuals who came to the United States illegally as children. *See Arpaio v. Obama*, 797 F.3d 11, 15-18 (D.C. Cir. 2015) (explaining history of DACA); *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1058-59 (9th Cir. 2014) (same); *see also Texas v. United States*, 809 F.3d 134, 146-47 (5th Cir. 2015), *aff'd*, *United States v. Texas*, 136 S. Ct. 2271 (June 23, 2016) (per curiam) (providing brief history of DACA in case involving 2014 expansion of DACA and another federal directive, Deferred Action for Parents of Americans and Lawful Permanent Residents program ("DAPA")); *Crane v. Napolitano*, 920 F. Supp. 2d 724, 729-30 (N.D. Tex. 2013) (describing, in more detail, history of DACA and eligibility requirements). Among other eligibility requirements, individuals must not have "been convicted of . . . a significant misdemeanor offense." *Crane*, 920 F. Supp. 2d at 730. For purposes of DACA, driving while intoxicated is considered "a significant misdemeanor offense." *See Arpaio*, 797 F.3d at 17.

ineligible for DACA. However, Martinez acknowledged on cross-examination that, prior to his plea, he was aware that he could be deported from the United States as a result of his status as an illegal alien, which is why he had hired an immigration attorney in addition to Sinsabaugh following his arrest.

Sinsabaugh testified that he could not recall the specific details of his conversations with Martinez regarding the DWI case or whether he had ever discussed with Martinez the immigration consequences of a plea, although Sinsabaugh explained that it was his customary practice to do so with all of his clients. Sinsabaugh also testified that he was aware at the time of his representation that Martinez had also hired an immigration attorney and that Martinez "had an immigration question or issues at some point prior" to his plea, but Sinsabaugh could not recall what those issues were. Sinsabaugh further testified that he had heard of DACA but did not know the date when it began, and he acknowledged that, at the time of his representation of Martinez, he was unaware of any eligibility of Martinez for DACA or that a DWI conviction would make Martinez ineligible for DACA.

In addition to the testimony of Martinez and Sinsabaugh, the trial court also considered the probable-cause affidavit and plea paperwork from Martinez's underlying DWI case. At the conclusion of the hearing, the trial court took the matter under advisement and subsequently denied relief. This appeal followed.

## STANDARD OF REVIEW

In reviewing the trial court's decision to grant or deny habeas corpus relief, we view the facts in the light most favorable to the trial court's ruling and uphold that ruling absent an abuse

of discretion.[4] A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without reference to any guiding rules or principles.[5] We are not to reverse the trial court's ruling unless the decision "is so clearly wrong as to lie outside that zone within which reasonable persons might disagree."[6]

"An applicant for a post-conviction writ of habeas corpus bears the burden of proving his claim by a preponderance of the evidence."[7] "To demonstrate that he is entitled to post-conviction relief on the basis of ineffective assistance of counsel, an applicant must demonstrate that (1) counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (2) the applicant was prejudiced as a result of counsel's errors, in that, but for those errors, there is a reasonable probability of a different outcome."[8] "In the context of a collateral challenge to a guilty [or no-contest] plea, the focus of the prejudice inquiry is on 'whether counsel's constitutionally ineffective performance affected the outcome of the plea process,' and on whether a defendant has shown that 'but for counsel's errors, he would not have pleaded guilty [or no contest] and would have insisted on going to trial.'"[9]

---

[4] *Ex parte Gill*, 413 S.W.3d 425, 428 (Tex. Crim. App. 2013); *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006); *Ex parte Ali*, 368 S.W.3d 827, 830 (Tex. App.—Austin 2012, pet. ref'd).

[5] *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016); *Ali*, 368 S.W.3d at 830.

[6] *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005); *Robisheaux v. State*, 483 S.W.3d 205, 217 (Tex. App.—Austin 2016, pet. ref'd).

[7] *Ex parte Torres*, 483 S.W.3d 35, 42 (Tex. Crim. App. 2016) (citing *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002)).

[8] *Id*. (citing *Strickland v. Washington*, 466 U.S. 668, 687, 693 (1984)).

[9] *Id*. (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

**ANALYSIS**

In his sole issue on appeal, Martinez asserts that the trial court abused its discretion in denying his application for writ of habeas corpus because, in Martinez's view, the record establishes conclusively that trial counsel was ineffective. According to Martinez, he proved by the preponderance of the evidence that counsel was deficient in failing to advise him that a DWI conviction would make him ineligible for DACA and, further, that Martinez would have insisted on going to trial if he had been so advised.

We first address the deficiency prong. In *Padilla v. Kentucky*, the United States Supreme Court held that "[t]he weight of prevailing professional norms supports the view that counsel must advise [his] client regarding the risk of deportation" when "the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence for [a] conviction."[10] However, the Court added, "When the law is not succinct and straightforward, . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences."[11] The Court explained:

> Immigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it. There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited.[12]

---

[10] 559 U.S. at 367-68.

[11] *Id*. at 369.

[12] *Id*.

5

In *Padilla*, counsel was found to be deficient because he had failed to advise his client that a conviction for a drug offense would make Padilla subject to "automatic deportation" pursuant to the terms of an immigration statute that were "succinct, clear, and explicit in defining the removal consequence for Padilla's conviction."[13] In this case, unlike in *Padilla*, counsel's alleged deficiency was not a failure to warn his client that a conviction would subject him to "automatic deportation." Instead, counsel's alleged deficiency was a failure to warn Martinez that a conviction would make him ineligible for DACA, a "directive" of "deferred action" on the enforcement of immigration laws that had been announced by the Department of Homeland Security in June 2012, only two months prior to Martinez's plea.[14] Although "[i]gnorance of well-defined general laws, statutes and legal propositions is not excusable and such ignorance may lead to a finding of constitutionally deficient assistance of counsel," the "specific legal proposition must be 'well considered and clearly defined.'"[15] Thus, counsel should not be declared ineffective when counsel's claimed error is based on law that is not "well considered and clearly defined."[16] On this record, it would not be outside the zone of reasonable disagreement for the trial court to conclude that, at the time of Martinez's

[13] *Id*. at 360, 368.

[14] *See Arpaio*, 797 F.3d at 15-18.

[15] *Ex parte Chandler*, 182 S.W.3d 350, 358 (Tex. Crim. App. 2005).

[16] *See, e.g.*, *State v. Bennett*, 415 S.W.3d 867, 869 (Tex. Crim. App. 2013); *Ex parte Smith*, 296 S.W.3d 78, 81 (Tex. Crim. App. 2009); *Ex parte Roemer*, 215 S.W.3d 887, 894 (Tex. Crim. App. 2007); *Ex parte Bahena*, 195 S.W.3d 704, 707 (Tex. Crim. App. 2006); *Chandler*, 182 S.W.3d at 358-59; *Ex parte Welch*, 981 S.W.2d 183, 184 (Tex. Crim. App.1998).

6

plea, DACA was not "well considered and clearly defined" and thus that counsel was not deficient in failing to advise Martinez that a DWI conviction would make him ineligible for DACA.[17]

Moreover, even if counsel's performance had been deficient, it would not be outside the zone of reasonable disagreement for the trial court to conclude that Martinez had failed to prove that he had been prejudiced as a result of that performance. In the context of a *Padilla* claim, "the proper standard for determining prejudice is the one set forth in *Hill*, which requires an applicant to show a reasonable probability that counsel's errors affected the outcome of the plea proceedings, in the sense that, but for counsel's errors, the applicant would have rejected the plea bargain and instead pursued a trial."[18] "Stated another way, he 'must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'"[19] "In determining whether an applicant would not have pleaded guilty but for counsel's deficient advice, a court is to consider 'the circumstances surrounding the plea and the gravity of the misrepresentation material to that determination.'"[20] "'The test is objective; it turns on what a reasonable person in the defendant's shoes would do.'"[21] Factors to consider in the analysis include "the evidence supporting

---

[17] Martinez has directed us to only one case in which counsel was found to be ineffective for failing to warn his client of, among other things, the DACA eligibility requirements. *See State v. Villegas*, No. 05-13-00841-CR, 2013 Tex. App. LEXIS 15096, at *17 (Tex. App.—Dallas Dec. 13, 2013, no pet.) (mem. op, not designated for publication). However, the procedural posture of that case was different, in that the trial court had granted habeas relief and the State was appealing the trial court's decision. *See id*. at *1. The Dallas Court of Appeals affirmed, "[a]fter reviewing the evidence under the appropriately deferential standard of review." *Id*. at 17-18. The procedural posture here is reversed, as is the effect of the governing standard of review.

[18] *Torres*, 483 S.W.3d at 46 (citing *Hill*, 474 U.S. at 59).

[19] *Ali*, 368 S.W.3d at 835 (quoting *Padilla*, 559 U.S. at 372).

[20] *Id*. at 835-36 (quoting *Ex parte Moody*, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999)).

[21] *Id*. at 835 (quoting *United States v. Smith*, 844 F.2d 203, 209 (5th Cir. 1988)).

7

an applicant's assertions, the likelihood of his success at trial, the risks the applicant would have faced at trial, the benefits received from the plea bargain, and the trial court's admonishments."[22]

We first observe that although Martinez testified at the habeas hearing, he provided no testimony tending to show that he would have insisted on going to trial if he had known that a DWI conviction would make him ineligible for DACA. Nor did he provide any testimony tending to show that he was primarily concerned with the immigration consequences of a conviction rather than with the jail time and other consequences that he could face if convicted. Instead, Martinez merely alleged in his writ application that "he would have insisted on a trial on the merits." However, it is well established that "the pleadings . . . are alone an inadequate basis for granting habeas relief."[23] The absence of evidence tending to show that Martinez would have insisted on going to trial if he had been informed of DACA supports a finding by the trial court that Martinez failed to prove prejudice.[24] Additionally, the probable-cause affidavit from the DWI case was admitted into evidence at the hearing. In the affidavit, there were multiple statements by the arresting officer tending to show that Martinez had in fact committed the offense of driving

---

[22] *Torres*, 483 S.W.3d at 48.

[23] *Id*. at 49-50; *see Gonzales v. State*, 435 S.W.3d 801, 811 (Tex. Crim. App. 2014); *see also State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013) ("But in all habeas cases, sworn pleadings are an inadequate basis upon which to grant relief, and matters alleged in the application that are not admitted by the State are considered denied."); *Ex parte Taylor*, 690 S.W.2d 33, 34 (Tex. App.—Beaumont 1985, no writ) ("'The allegations in the petition for writ of habeas corpus are not evidence, although sworn to, and do not prove themselves.'" (quoting *Ex parte Bowers*, 98 S.W.2d 191, 191 (Tex. Crim. App. 1936))).

[24] *See Torres*, 483 S.W.3d at 49-50.

8

while intoxicated.[25]  Also, Martinez provided no testimony or other evidence tending to negate the statements in the affidavit or suggest any possible factual or legal defenses to the DWI charge. Thus, the trial court could have reasonably inferred that if Martinez had insisted on going to trial, he likely would have been convicted of DWI anyway.  Thus, in addition to being ineligible for DACA, Martinez would have faced up to six months' confinement and a $2,000 fine, the maximum penalty for a Class B misdemeanor.[26]  Instead, as a result of his plea, Martinez received a sentence of three days in jail (which, the record reflects, he had already served prior to his plea), and a fine of $850.00.  Based on the above and other evidence, the trial court would not have abused its discretion in finding that it would not have been rational under the circumstances for Martinez to reject the plea and insist on going to trial.[27]

On this record, we cannot conclude that the trial court abused its discretion in denying Martinez's application for writ of habeas corpus.  We overrule Martinez's sole issue on appeal.

---

[25] The officer averred that he had observed Martinez's vehicle parked on a sidewalk in front of Temple City Hall at approximately 2:30 a.m. with its airbags deployed and the keys in the ignition, with Martinez in the driver's seat and the only occupant in the vehicle.  The officer explained that the vehicle appeared to have "hit a tree on the side of the road and then drove over the curb and into the grass in front of city hall before rolling back down onto the street."  The officer further averred, "While speaking to [Martinez], I noticed his eyes were bloodshot and his speech was slow and slurred."  According to the officer, Martinez admitted that he had been drinking that night but claimed that he had only "one beer."  The officer then explained that he had Martinez perform several field sobriety tests and that Martinez had exhibited numerous signs of intoxication during the tests, prompting the arrest.

[26] *See* Tex. Penal Code § 12.22.

[27] *See Torres*, 483 S.W.3d at 49-51; *Ex parte Fassi*, 388 S.W.3d 881, 888-90 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Ali*, 368 S.W.3d at 840.

**CONCLUSION**

We affirm the trial court's order.

_____

Bob Pemberton, Justice

Before Chief Justice Rose, Justices Pemberton and Field

Affirmed

Filed:   August 31, 2016

Do Not Publish